UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DESIREE L. KINSEY-MCHENRY,  )<br>        Plaintiff,  )<br>        )<br>     v.  )<br>        )<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of the  )<br>Social Security Administration,  )<br>        Defendant.  ) | CAUSE NO.: 2:12-CV-332-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Desiree L. Kinsey-McHenry on August 15, 2012, and Plaintiff's Brief in Support of Reversal of Commissioner's Final Decision [DE 18], filed January 22, 2013. Plaintiff requests that the Court remand the Administrative Law Judge's decision denying her supplemental security income ("SSI") for further administrative proceedings. On February 26, 2013, the Commissioner filed a response, and Plaintiff filed a reply on March 14, 2013. For the reasons set forth below, Ms. Kinsey-McHenry's request is granted.

**PROCEDURAL BACKGROUND**

Plaintiff Desiree Kinsey-McHenry filed an application for SSI October 14, 2009. This application was denied initially on March 18, 2010, and on reconsideration on August 30, 2010. Ms. Kinsey-McHenry was granted her request for a hearing before an Administrative Law Judge ("ALJ"), which took place on January 4, 2011, before ALJ Ramona Scales. Ms. Kinsey-McHenry was represented by an attorney. Ms. Kinsey-McHenry and a vocational expert ("VE") testified at the hearing. The ALJ made the following findings:

    1.    The claimant has not engaged in substantial gainful activity since October 14, 2009, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: history of carotid artery aneurism with surgery, vision loss of the right eye and palsy of the third nerve (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: the claimant is unable to climb ladders, ropes or scaffolds, is limited to occasional climbing of ramps and stairs, balancing, kneeling, crouching and crawling, and frequent stooping. The claimant must also avoid even moderate exposure to hazards in the workplace such as dangerous machinery and unprotected heights, and is unable to perform jobs which require a full range of vision.

5. The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since October 14, 2009, the date the application was filed (20 CFR 416.920(f)).

(AR 16-21).

The ALJ issued her decision on March 18, 2011, and the Appeals Council declined review on March 22, 2012, establishing the ALJ's decision as the final determination of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 416.1481. Following denial of review, Ms. Kinsey-McHenry was referred to new counsel, and, after the Appeals Counsel granted her request for an extension of time, Ms. Kinsey-McHenry timely filed her Complaint. 20 C.F.R. § 416.1482.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### A. Background

Plaintiff Desiree Kinsey-McHenry was born in 1975. Ms. Kinsey-McHenry was 34 years old at the time she filed her application and 36 years old at the time the ALJ issued her decision. Ms. Kinsey-McHenry worked as a receptionist, but she has not worked since 2001. From 1990 to 2001 she earned $24,623.93. At the time of the hearing, Ms. Kinsey-McHenry lived with her two children and friend, Kia Olive.

### B. Medical History

Ms. Kinsey-McHenry has a medical history of headaches, depression, carotid artery aneurism, vision loss, and palsy of the right eye. However, the disputes in this action relate only to Ms. Kinsey-McHenry's headaches, depression, and her medication, each of which are discussed in turn.

*1.    Headaches*

Ms. Kinsey-McHenry first reported migraines to Dr. Paul Okolocha in November 2008. Dr. Okolocha's records indicate that Ms. Kinsey-McHenry reported headaches on two occasions.

On November 18, 2008, Dr. Okolocha referred Ms. Kinsey-McHenry to Dr. Neil Watkins at 20/20 Eye Specialists. Dr. Watkins noted that Ms. Kinsey-McHenry's chief complaints were blurred vision, light sensitivity, headaches, double vision, and pain when opening her right eye. Dr. Watkins diagnosed third nerve palsy and prescribed medication for the eye pain.

Nearly one year later, on October 16, 2009, Dr. George Abu-Aita ordered a CT scan of Ms. Kinsey-McHenry, revealing an elongated aneurysm in the right distal internal carotid artery. On October 30, 2009, Ms. Kinsey-McHenry was referred to Dr. Hytham Rifai who noted that Ms.

Kinsey-McHenry had a history of headaches. After reviewing the CT scan he recommended surgery to remove the aneurysm. Dr. Rifai performed the surgery on November 2, 2009.

After the surgery, under the care of Dr. Choong Yoon at Methodist Hospital, Ms. Kinsey-McHenry began a rehabilitation program for gait training and daily-living training. Dr. Yoon's initial review of Ms. Kinsey-McHenry shows she complained of headaches.

On January 4, 2011, at the hearing, Ms. Kinsey-McHenry testified that she was having headaches since her surgery. She claims her headaches are severe enough to render her functionless. In 2010, Ms. Kinsey-McHenry had three CT scans of her head. A February 2, 2010 CT scan showed no abnormalities. A repeat CT scan on May 18, 2010 also showed no abnormalities. A third CT scan on December 17, 2010 also showed no abnormalities.

On March 18, 2010, Dr. M. Ruiz, the state agency medical consultant, completed a Physical Residual Functional Capacity Assessment. Dr. Ruiz made no finding regarding headaches, except to report that Ms. Kinsey-McHenry had reported headaches to other doctors in the past.

On July 29, 2010, Ms. Kinsey-McHenry was referred to Irene M. Walters, Ph.D, by the State of Indiana Disability Determination Bureau. During this meeting, Ms. Kinsey-McHenry rated her headache pain at the highest level, a ten out of ten. Dr. Walters diagnosed Ms. Kinsey-McHenry with chronic headaches.

On August 25, 2010, Kari Kennedy, Ph.D, completed a psychiatric review of Ms. Kinsey-McHenry and made no mention of headaches.

On February 21, 2011, Dr. John Kincaid performed a Medical Source State of Ability to Do Work-Related Activities and concluded that Ms. Kinsey-McHenry was capable of performing activities such as shopping, meal preparation, personal hygiene, and climbing of stairs.

*2.     Depression*

On July 29, 2010, Dr. Walters examined Ms. Kinsey-McHenry and noted that she was taking a number of medications, including Cymbalta and paroxetine. Dr. Walters diagnosed Ms. Kinsey-McHenry with depressive disorder.

On August 25, 2010, Dr. Kennedy completed a Psychiatric Review Technique form and reported that Ms. Kinsey-McHenry suffers from depressive disorder, but that the impairment is not severe. Restrictions in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace were all rated mild. There were no episodes of decompensation.

There was no discussion of depression at the hearing.

*3.     Medications*

On January 5, 2011, Dr. Abu-Aita's record of his interaction with Ms. Kinsey-McHenry notes the words Abilify and Cymbalta in a list of seven other medications. The phrase, "Depression by Dr. Okolocha," appears to be written adjacent to this list. (AR 534).

In her report of the July 29, 2010 examination, Dr. Walters noted that Ms. Kinsey-McHenry reported that she was taking Hydrocodone, Lisinopril, Cymbalta, paroxetine, oxybutynin chloride, gabapentin, and Rybix.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous

legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing

6

court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and h[er] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2012). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled,

and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Ms. Kinsey-McHenry presents five arguments for remand of the ALJ's decision: (1) the ALJ failed to properly analyze her headaches; (2) the ALJ failed to use the "special technique" of 20 C.F.R. § 416.920a to evaluate her depression; (3) the ALJ failed to analyze her "Paragraph B" mild functional limitations; (4) the ALJ made a mistake of fact by stating that Ms. Kinsey-McHenry was never prescribed psychiatric medications; and (5) the ALJ did not properly analyze the side effects of her medications. The Court considers each argument in turn, with the exception of Ms. Kinsey-

8

McHenry's second argument, which Ms. Kinsey-McHenry conceded in her Reply Brief, recognizing that the ALJ did, in fact, utilize the special technique.[1]

## A. Headaches

Ms. Kinsey-McHenry argues that the ALJ erred when she failed to properly analyze Ms. Kinsey-McHenry's claims of headaches in formulating the RFC. Ms. Kinsey-McHenry particularly points out that Social Security Ruling 96-8p and other relevant case law were ignored. The Commissioner contends that the ALJ's RFC analysis is proper because its credibility determination is supported by substantial evidence.

Social Security Rulings (SSRs) are binding on all proceedings within the administrative process and are precedential in adjudication. 20 C.F.R. § 402.35(b)(1). SSR 96-8p was drafted to aid ALJs in assessing initial claim RFCs and requires that the RFC assessment be based on all of the relevant evidence in the record. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). This evidence includes medical history; medical signs and laboratory findings; the effects of treatment, including limitations on restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication); reports of daily activities; lay evidence; recorded observations; medical source statements; effects of symptoms, including pain that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for structured living environment; and work evaluations (if available). *See id*.

SSR 96-8p also provides, "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

---

[1] Ms. Kinsey-McHenry withdrew the argument, writing: "Hence, the ALJ minimally complied with the special technique requirements of 20 C.F.R. § 416.920a. ALJs most often provide this analysis at step 3 of the sequential process, but here the ALJ used the 'special technique' in the middle of [her] RFC findings, and Plaintiff did not notice this when drafting her opening merits brief." Pl. Reply 4.

9

findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Finally, specifically with regard to symptoms, the SSR requires that the RFC assessment:

> *Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;
>
> *Include a resolution of any inconsistencies in the evidence as a whole; and
>
> *Set forth a logical explanation of the affects of the symptoms, including pain, on the individual's ability to work.

*Id.*

The Court finds that the three instances in which the ALJ mentions Ms. Kinsey-McHenry's headaches are void of any attempt to thoroughly discuss or analyze the evidence as required by SSR 96-8p. First, the ALJ began the RFC analysis by listing Ms. Kinsey-McHenry' alleged impairments of loss of vision in her right eye, third nerve palsy, history of aneurism, and headaches. *Id.* Second, the ALJ then summarized Ms. Kinsey-McHenry's allegations, acknowledging Ms. Kinsey-McHenry's testimony that she experiences severe headaches five times a week. Without specifically mentioning headaches or any other impairment, the ALJ concluded by setting forth the now-common "boilerplate" paragraph, finding generally that Ms. Kinsey-McHenry's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that she was not fully credible.

Over the next two and a half pages, the ALJ conducted the credibility determination and analyzed the evidence of record relied upon in formulating the RFC in the format routinely followed by ALJs. The only mention of headaches in this analysis section is the third instance in which the ALJ uses the word "headache" and it is within the context of analyzing Ms. Kinsey-McHenry's aneurism surgery. The ALJ noted that Ms. Kinsey-McHenry was discharged in November 2009 in

stable condition and returned to one of her doctors to obtain treatment for headaches, which included being prescribed Darvocet and Vicodin for her alleged symptoms. The ALJ then concluded, "Despite these allegations, the claimant has not received any treatment related to her aneurism since November of 2010." (AR 19). The ALJ also noted that a CT scan of Ms. Kinsey-McHenry's brain indicated normal brain functions. *Id.* There is no discussion of this evidence in relation to Ms. Kinsey-McHenry's testimony and ongoing complaints of headaches.

Thus, the ALJ failed to engaged in a narrative of why or why not Ms. Kinsey-McHenry's headache pain was discounted in the overall RFC finding. Notably, the administrative record contains evidence of headaches. Dr. Walters diagnosed Ms. Kinsey-McHenry with chronic headaches, and Dr. Okolocha's records indicate that on two occasions Ms. Kinsey-McHenry reported headaches. The mention of Ms. Kinsey-McHenry's allegations and the fact of treatment for headaches in relation to the aneurism do not satisfy the requirements of SSR 96-8p.

As in *Indoranto v. Barnhart*, in which the claimant also alleged headaches at the hearing and complained of headaches to her doctors, the ALJ is not required to discuss every piece of evidence in the record, but she must confront the evidence that does not support her conclusion and explain why it was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ did not do so with regard to Ms. Kinsey-McHenry's headaches. The Commissioner counters that substantial evidence exists to support the ALJ's decision and that the record lacks any objective evidence to corroborate Ms. Kinsey-McHenry's complaints, pointing to inconsistencies in Ms. Kinsey-McHenry's testimony and medical reports and the lack of corroborative evidence to support her claims. However, the ALJ did not make these points in her decision, and the Commissioner may not provide this analysis for her.

11

Ms. Kinsey-McHenry also argues that the ALJ failed to comply with SSR 96-7p because the Seventh Circuit Court of Appeals has regularly recognized that "an ALJ may not disregard a claimant's testimony about the severity of her symptoms without providing careful analysis." Pl. Br. 10 (citing *Phillips v. Astrue*, 601 F. Supp. 2d 1020, 1030 (N.D. Ill. 2009) (discussing *Briscoe*, 425 F.3d at 353-55; *Golembiewski v. Barnhart*, 322 F.3d 912, 915-06 (7th Cir. 2003); *Giles*, 483 F.3d at 489). The Commissioner counters that, based on the evidence in the case as a whole, the ALJ was justified in concluding that Ms. Kinsey-McHenry was not credible.

SSR 96-7p provides that the ALJ is to make a decision on the credibility of the claimant and use it to determine the veracity of the reported symptoms. However, SSR 96-7p also plainly states:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In sum, the ALJ is to make a credibility determination, but not without explaining the reasons for her conclusion. As set forth above, the ALJ only referred to "headaches" three times in the RFC/credibility section, and not one of them was substantive or analytical. In this case, the ALJ conducted no credibility analysis as to Ms. Kinsey-McHenry's headaches.

It may be that the ALJ found Ms. Kinsey-McHenry not fully credible as to her headaches and that the ALJ fully considered all the evidence of record and the testimony to find that Ms. Kinsey-McHenry does not suffer any limitations from her headaches; however, this is not discernible from

the ALJ's decision.[2] On remand, should the ALJ come to the same conclusions, she shall include the analysis and discussions required by SSR 96-7p and SSR 96-8p.

### B. Depression–"Paragraph B" Analysis

Ms. Kinsey-McHenry argues that the ALJ failed to properly analyze her functional limitations regarding her depression when forming the RFC. Specifically, Ms. Kinsey-McHenry argues that, despite having only mild limitation in her daily living, social functioning, and in maintaining concentration, persistence or pace, and no episodes of decompensation, the ALJ must provide an analysis to show that these mild limitations were considered in formulating her RFC. In addition, she argues that, in her case, additional limitations based on her depression should have been factored into the RFC.

The regulations provide that, if the ALJ rates the degree of limitation in the first three categories as "none" or "mild" and "none" in the fourth area, the impairment is "not severe." 20 C.F.R. § 416.920a(d)(1). A "non-severe" impairment is one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities," which include physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(a), (b). Nevertheless, an ALJ must include limitations from non-severe impairments in the RFC determination. SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those

---

[2] The Court notes that many of the page references cited by Ms. Kinsey-McHenry in her brief support of her allegations of headaches contain no reference to headaches. *See* (AR 430, 429, 428, 426).

that are not 'severe.'"); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Golembiewski*, 322 F.3d at 917; *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, *13 (N.D. Ill. 2013); *Koswenda v. Astrue*, 08 C 4732, 2009 WL 958542 (N.D. Ill. 2012); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011). The failure to consider the impact of severe and non-severe impairments warrants reversal. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

In her decision, the ALJ found at step two that Ms. Kinsey-McHenry did not suffer from severe depression. The ALJ noted that Ms. Kinsey-McHenry was diagnosed with depressive disorder and that Ms. Kinsey-McHenry claims some depression. Nevertheless, the ALJ found that the "bulk of her functional limitations appear to relate to her physical problems." *Id.* The ALJ further stated:

> [T]the claimant has neither undergone psychiatric treatment with a mental health professional nor has even been prescribed psychiatric medications from her treating physician. The undersigned finds the claimant's depression has no more than a minimal impact on her ability to perform work-related activities and is a non-severe impairment.

(AR 17).

At the third step of the sequential evaluation process, the ALJ stated that she considered Ms. Kinsey-McHenry's mental impairments, both individually and in combination, and found that they do not meet or medically equal the criteria listing. The ALJ also stated that she considered the "Paragraph B" criteria in making this finding. The ALJ recognized that a claimant may only satisfy the "Paragraph B" criteria if at least two of her functional limitations are at least rated "marked" and/or the claimant has repeated episodes of decompensation.

At step four of the sequential evaluation process, the ALJ noted that Dr. Kennedy indicated that Ms. Kinsey-McHenry's depressive disorder was not severe because it only caused mild

restrictions in her functional limitations and no episodes of decompensation. The ALJ gave this opinion great weight because it was consistent with the record as a whole. The ALJ also gave Dr. Walters's opinion "little" weight because her findings of moderate psychiatric symptoms were inconsistent with the medical record as a whole. The ALJ concluded that the record indicates that Ms. Kinsey-McHenry has no mental impairment because Ms. Kinsey-McHenry told Dr. Walters that she was disabled due to her physical impairments, not due to any mental impairment, and because Ms. Kinsey-McHenry was neither seeking treatment with a mental health professional nor had ever been prescribed psychiatric medications.

The ALJ's decision shows that she did consider Ms. Kinsey-McHenry's mental impairment. The ALJ specifically reviewed the functional limitations and discussed the mental medical findings of Dr. Watkins and Dr. Kennedy. While the ALJ credited these medical opinions with little and great weight respectively, she went on to analyze why she found that Ms. Kinsey-McHenry had no mental impairment and gave specific reasons to conclude that the record suggests Ms. Kinsey-McHenry does not have any mental impairment. The Court finds that the ALJ's discussion satisfies the analysis requirements of the case law and social security rulings on the issue of whether any limitations should be included in the RFC based on her depression.

Finally, the Court notes that Ms. Kinsey-McHenry cites *Golembiewski v. Barnhart* for its statement that "[i]t is not reasonable for the ALJ to find that a condition does not exist at all where the evidence establishes that is does exist even if it is 'small'." Pl. Br. 15 (citing *Golembiewski*, 382 F.3d at 725). The regulations provide that the ALJ is to "always consider the medical evidence in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 416.927(b). The regulations also state that the ALJ will "make findings about what the evidence shows." 20

C.F.R. § 416.920; SSR 96-5p, 1996 WL 374183, at *5 (1996) (reserving administrative findings such as development of the RFC for the ALJ and prohibiting controlling weight on medical source opinions in RFC development because it would be an abdication of the Commissioner's statutory responsibilities).

In this case, the ALJ considered the evidence of both mental health opinions and concluded that the evidence still showed that Ms. Kinsey-McHenry did not have a mental impairment. Based on this conclusion (supported by the specific reasons stated above), and as authorized by the regulations, it was then appropriate for the ALJ not to incorporate any limitations in the RFC based on her mild mental limitations. Accordingly, the Court denies the request to remand on this basis.

### C. Psychiatric Medications

The ALJ's decision states twice that Ms. Kinsey-McHenry was not prescribed psychiatric medications from her treating physician. Ms. Kinsey-McHenry points out that this record "reveals that she was prescribed psychiatric medications" and argues that this mistake warrants remand. Pl. Br. 18, (citing (AR 534)). The Commissioner argues Dr. Abu-Aita's treatment notation is largely illegible and inconclusive and the ALJ's general observation that there was no prescription for psychiatric medications should be overlooked because it is consistent with the record as a whole. Both parties fail to point out that the administrative record mentions depression related drugs on another occasion. Within her Consultative Examination Report, Dr. Walters recorded that Ms. Kinsey-McHenry claimed to be taking numerous drugs, including Cymbalta and paroxetine, an antidepressant. *See* (AR 338).

Thus, the ALJ erred in stating categorically that Ms. Kinsey-McHenry was not taking medication for her mental impairments. However, the Court nevertheless finds that substantial

evidence supports the ALJ's determination as to limitations flowing from Ms. Kinsey-McHenry's non-severe mental impairments. The Court notes that the hearing record includes no discussion of mental health conditions. Further, Ms. Kinsey-McHenry's attorney's opening statement does not include mental health conditions as a reason for her claim of disability. Nevertheless, because the Court is remanding this case on other issues and in the interest of a complete analysis, the ALJ shall address the evidence in the record related to depression medications on remand in the discussion of Ms. Kinsey-McHenry's mental impairments.

### D. Medication Side Effects

Finally, Ms. Kinsey-McHenry argues that the ALJ failed to consider the side effects of her medication in determining her RFC. She argues that there was no analysis of the side effects as required by SSR 96-8p. The Commissioner responds that the ALJ did not find Ms. Kinsey-McHenry credible and that the failure to discuss a single credibility factor is not fatal when the substantial evidence supports a finding that Ms. Kinsey-McHenry is not credible. Ms. Kinsey-McHenry responds that SSR 96-7p requires the ALJ to include side effects of medication in any credibility discussion.

The regulations and SSR 96-7p both require the ALJ to consider the "types, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" when evaluating the symptoms and credibility of the claimant. 20 C.F.R. § 416.929(3)(iv); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ failed to discuss the medication and its side effects in her credibility analysis of Ms. Kinsey-McHenry despite having asked Ms. Kinsey-McHenry about her medications, Ms. Kinsey-McHenry's testimony regarding the side effects of her medications, and notations in the treatment records regarding medication side

17

effects. Because this matter is being remanded on other grounds, the ALJ shall discuss the side effects of Ms. Kinsey-McHenry's medications in the credibility analysis.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the relief requested in Plaintiff's Brief in Support of Complaint [DE 18] **REMANDS** this matter for consideration consistent with this Opinion.

So ORDERED this 30th day of September, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record